UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONG LOR,

        Petitioner,

                                                                Case No. 16-11028

v.

                                                               HON. AVERN COHN

SHANE JACKSON,

        Respondent.

_____/

**MEMORANDUM AND ORDER**
**DENYING PETITION FOR A WRIT OF HABEAS CORPUS**
**AND DENYING A CERTIFICATE OF APPEALABILITY**

**I. Introduction**

This is a habeas case under 28 U.S.C. § 2254. Michigan prisoner Tong Lor ("Petitioner") was convicted of second-degree murder, M.C.L. § 750.317, two counts of assault with intent to murder, M.C.L. § 750.83, and three counts of possession of a firearm during the commission of a felony, M.C.L. § 750.227b, following a joint trial with separate juries with his brother, Tou Lor. He was sentenced to 30 to 80 years imprisonment on the murder conviction, concurrent terms of 15 to 40 years imprisonment on the assault convictions, and concurrent terms of two years imprisonment on the felony firearm convictions to be served consecutively.

In his petition, filed through counsel, Petitioner says that the evidence is insufficient to support his murder and assault convictions. For the reasons that follow, the petition will be denied.

## II. Facts and Procedural History

Petitioner's convictions arise from a shooting incident outside of a party at his home in Pontiac, Michigan on June 12, 2011. The Michigan Court of Appeals described the relevant facts, which are presumed correct on habeas review, 28 U.S.C. § 2254(e)(1); Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> Defendants Tong Lor and Tou Lor are brothers. Tong Lor hosted a graduation party for his sister and Tou Lor was in attendance. A group of men, at least one of whom had been invited to the party by defendants' sister, arrived at Tong Lor's house sometime after midnight. While they were clustered around their car, defendants and several other men confronted them. Both defendants were armed with guns and started shooting. Cher Kue was fatally wounded. Both defendants were convicted of second-degree murder in connection with Cher Kue's shooting death, and they were convicted of the assault offenses against brothers Nou Lee and Mou Lee.

People v. Lor, No. 310090, 2014 WL 3784341, *1 (Mich. Ct. App. July 31, 2014) (unpublished) (footnote omitted).

The following additional facts are gleaned from the record.[1]

At trial, Police Officer Daniel Main testified that seven shell casings from a semi-automatic .45 caliber gun were recovered from the scene of the shooting, as well as two spent bullets of unknown caliber. Officer Main saw no evidence that a shotgun or rifle had been fired, but admitted that the police may not have recovered every bullet fragment from the area.

Nicholas Vue testified that he drove to the graduation party with Cher Kue, Mou Lee, and Nou Lee. When they arrived at the house, Cher, Mou, and Nue exited the

---

[1]Because Petitioner has raised a sufficiency of the evidence claim, a detailed recitation of the facts presented at trial is necessary.

2

vehicle, but Nicholas remained in the car. Nicholas heard someone ask, "who are you?" and then heard multiple gunshots a minute or two later. During the shooting, Mou and Nue got back into the vehicle, but Cher, who was behind the vehicle, did not. Nicholas also testified that Petitioner, who was carrying a "big gun" estimated at almost two feel long, approached their vehicle and asked who they were. Mue replied, "Don't shoot. I'm your brother-in-law." In his police statement, Nicholas said that Petitioner replied, "Oh, you're good. I thought it was some other people." At trial, Nicholas recalled telling the police the same, but he did not really remember Petitioner saying it.[2] After this conversation, Petitioner walked away.

On cross-examination, Nicholas said that they arrived at the party at 1:30 a.m., that he heard eight gunshots, and that five to eight people were outside the house at the time of the shooting. After Petitioner left, Nicholas, Mou, and Nou looked for Cher. Nicholas also testified that two others, Phong Vang and Sue Kue, arrived at the house when they did, but in a separate vehicle. Additionally, several other vehicles were parked in the area at the time of the shooting, but they drove off immediately afterward and he could not identify who left in those vehicles. Nicholas acknowledged that he did not see Petitioner, or anyone else, shooting.

Nou Lee testified that Gee Lor invited him to her graduation party and he told her that he would come by and bring other people. He drove to the party in Cher's vehicle with Cher, Mou, and Nicholas and they were followed by Phong and Sue in a separate vehicle. When they first arrived at the house, no one was outside. While he was talking

---

[2]This portion of Nicholas' testimony was only presented to Petitioner's jury.

3

to Gee on the phone, six or more people came outside.  Petitioner was in the front of the group and he was carrying what Nou initially thought was a baseball bat, but was a long gun.  Another man had a smaller handgun.  Nou testified that Petitioner pointed the gun at him and Mou.  Petitioner asked who they were.  A second or two later, gunshots were fired.  Nou saw the smaller gun fire three times, but he heard four to six shots with two different types of gunfire, one being louder than the other.  Nou dropped to the ground when the shooting began and got back into the vehicle when it stopped.  He noticed that a back tire was hit and heard it going flat during the gunfire.  After the shooting, Petitioner pointed his gun at Mou or the group.  Mou said, "I'm your brother-in-law" and Petitioner replied, "Okay, you're good."  Petitioner then walked back up the driveway.  Nou exited the vehicle, went to Cher and put pressure on his wound, and called the police.  Nou saw a car leave the scene after the shooting.  On cross-examination, Nou testified that he and his companions were unarmed.  He did not see Petitioner fire his gun.

Mou Lee testified that he drove to Gee Lor's graduation party with Cher, Nou, and Nicholas.  After he exited the vehicle, someone came out of the house for a few seconds and went back inside.  A group of men then came out from the back yard.  Petitioner was in front of the group and he was carrying a gun.  Someone fired two shots from a smaller gun in the back of the crowd, but Mou did not see who fired.  Sue pushed Mou into the car and ran down the street with Phong.  Mou ducked down in the car.  He then heard about six more shots fired for a total of eight.  He saw Cher run behind his vehicle and Nou got back into the car.  After the shooting stopped, Petitioner and another man approached the vehicle.  Petitioner was pointing his gun at Mou and the other man said,

"shoot em." Mou yelled out that he was Petitioner's brother-in-law. Petitioner lowered the gun and left. After the shooting, co-defendant Tou Lor came to help Mou and the others aid Cher.

On cross-examination, Mou stated that he did not see Petitioner fire his gun, only the unidentified man with the smaller gun. He also stated that neither he nor his companions were armed with guns or knives. Mou testified that the two gunshots that were fired when he was back in the vehicle were louder than the initial two gunshots and that they were followed by additional gunshots.

Rachel Grace, a firearm and tool mark expert, testified that the seven casings recovered from the scene were Remington Peters .45 semi-automatic cartridge casings and were fired from the same firearm. She testified that another recovered item was a brass fired jacket .45 Taurus or IMI, although she could not rule out other firearm types, and that another recovered bullet was a copper-fired .44 or .45, which was not from the same gun. Grace also testified that bullets were recovered from Cher's vehicle tires, including two fired lead cores and a fired brass bullet. She stated that the fired brass bullet was from the same firearm as the brass fired jacket found at the scene. Grace obtained a lead fragment from the vinyl siding which was too damaged for comparison. Grace also inspected a copper fired jacket which was recovered from a neighbor's home and determined that it came from a .44 or a .45 caliber gun.

On cross-examination, Grace explained that all of the ballistics evidence recovered from the scene came from at least two guns and at most six guns. She testified that it was most likely that the recovered evidence came from two guns, a semi-automatic and a revolver. Grace did not believe that any of the evidence she tested

came from a rifle or a shotgun.

Phong Vang testified that he drove to the party with Sue Kue in a separate car following the others. They parked in a nearby lot and walked over to Cher's vehicle. While they were talking near the car, about four men came from the backyard. Phong could not identify them because it was dark. The two closer men had guns, one of which was an assault rifle with a clip and the other was a pistol. The man with the bigger gun said, "Go home." A few seconds later, he fired his gun in the direction of Cher and Mou. Phong scrambled on the ground around Cher's vehicle, and then ran down the street with Sue. He did not see the man with the pistol shoot. He explained that he heard four or five gunshots, but after the first two gunshots, he was on the ground and then heard the additional gunshots. Phong said neither he nor his companions were armed. He and Sue were picked up by Sue's relatives. Phong did not speak with the police that night and did not come forward on his own because he did not want to be involved.

Medical examiner Ruben Ortiz-Reyes testified that Cher died from two gunshot wounds - one to the chest and one to the right thigh. The size of the wounds was consistent with similar-sized ammunition, but he could not determine the type of ammunition.

Former police detective Jeff Buchman, the officer in charge of the case, testified that Mou identified Petitioner in a lineup. He did not conduct any gunshot residue tests in the case because he found them to be unreliable. He interviewed the women in the house during the party and they all told him that they were in the basement and did not witness the shooting.

At the close of the prosecution's proofs, Petitioner moved for a directed verdict on

6

the murder and assault charges. The trial court denied the motion.

The defense called Lee Vang as a witness. Lee testified that he was at the graduation party and observed a fight involving Jennie Lor, her brother Cy Tong (aka Jack) Lor, and some men who were at the party. While Lee was in the backyard smoking and talking with Petitioner, who was unarmed, he heard more than 10 gunshots and ducked down. He did not see where Tou was at that time. After the gunshots stopped, he went out front with Petitioner behind him and he saw Tou holding the man who had been shot (Cher). Lee estimated that the gunshots occurred 30 minutes or more after the fight had occurred.

The parties stipulated that co-defendant Tou Lor had a concealed carry weapon permit and that his registered gun was a Taurus .45 caliber semiautomatic handgun.

At the close of trial, the jury convicted Petitioner of second-degree murder, two counts of assault with intent to commit murder, and felony firearm.

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising several claims, including the claim presented on habeas review. The court of appeal denied relief on those claims and affirmed his convictions. Id. at *1-7. Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. People v. Lor, 497 Mich. 982 (2015).

Petitioner thereafter filed his federal habeas petition. He raises the following claim as a basis for relief:

> The Michigan Court of Appeals unreasonably applied the Supreme Court's holdings in Jackson v. Virginia and Nye & Nissan v. U.S. in finding that Petitioner's Fifth Amendment right to due process, and to be convicted only

7

upon sufficient evidence, was not violated, where he was convicted as an aider and abettor to several offenses for simply pointing a weapon at a member of the victim's group moments before several unknown assailants fired many shots.

Respondent has filed an answer to the petition contending that it should be denied. Petitioner has filed a reply to that answer.

### III.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 et seq., sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions.  The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)); see also Bell v. Cone, 535 U.S. 685, 694 (2002).

8

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413); see also Bell, 535 U.S. at 694.  However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" Wiggins, 539 U.S. at 520-21 (citations omitted); see also Williams, 529 U.S. at 409.  "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 559 U.S. 766, 773 (2010) (quoting Lindh, 521 U.S. at 333, n. 7; Woodford v. Viscotti, 537 U.S. 19, 24 (2002) (per curiam)).

The Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)).  A habeas court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id.  Federal

9

judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." Woods v. Donald, _ U.S. _, 135 S. Ct. 1372, 1376 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. Woods v. Etherton, _ U.S. _, 136 S. Ct. 1149, 1152 (2016).

## IV. Discussion

Petitioner contends that he is entitled to habeas relief because the prosecution presented insufficient evidence to support his second-degree murder conviction and his two assault with intent to commit murder convictions. Respondent says that this claim lacks merit.

### A. Great Weight of the Evidence

As an initial matter, Petitioner is not entitled to habeas relief on any claim that the jury verdict was against the great weight of the evidence. It is well-established that habeas review is not available to correct errors of state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). The federal constitution requires only that the evidence be sufficient to sustain the conviction under the standard established in Jackson v. Virginia, 443 U.S. 307 (1979). Where the evidence is sufficient as a matter of due process, a claim that the verdict was against the weight of the evidence presents a state law issue which is not cognizable on habeas review. A federal habeas court has no power to grant relief on the ground that a state conviction is against the great weight of the evidence. Cukaj v. Warren, 305 F. Supp. 2d 789, 796

(E.D. Mich. 2004); Dell v. Straub, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002). Habeas relief is thus not warranted on such a basis.

## B. Sufficiency of the Evidence

### 1. Legal Standards

Turning to whether sufficient evidence supports his conviction, the federal due process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319.

A federal habeas court views this standard through the framework of 28 U.S.C. § 2254(d). Martin v. Mitchell, 280 F.3d 594, 617 (6th Cir. 2002). Thus, under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable. Brown v. Konteh, 567 F.3d 191, 205 (6th Cir. 2009). Furthermore, the Jackson standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." Brown v. Palmer, 441 F.3d 347, 351 (6th Cir. 2006) (quoting Jackson, 443 U.S. at 324 n. 16).

A federal court views this standard through the framework of 28 U.S.C. § 2254(d). Martin v. Mitchell, 280 F.3d 594, 617 (6th Cir. 2002). Under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to

11

groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable. Brown v. Konteh, 567 F.3d 191, 205 (6th Cir. 2009). "[I]t is the responsibility of the jury – not the court – to decide what conclusions should be drawn from the evidence admitted at trial." Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam). "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." Matthews v. Abramajtys, 319 F.3d 780, 788 (6th Cir. 2003) (citing Marshall v. Lonberger, 459 U.S. 422, 434 (1983)). Accordingly, the "mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." Matthews, 319 F.3d at 788-89.

Under Michigan law, the elements of second-degree murder are: 1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. People v. Goecke, 457 Mich. 442, 463-64 (1998) (citing People v. Bailey, 451 Mich. 657, 669, 549 N.W.2d 325 (1996)); M.C.L. § 750.317. Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to perform an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm. Id. at 464 (citing People v. Aaron, 409 Mich. 672, 728 (1980)). Malice may be inferred from evidence that a defendant intentionally set in motion a force likely to cause death or great bodily harm. People v. Djordjevic, 230 Mich. App. 459, 463 (1998) (citing Aaron). Malice may also be inferred from the use of a deadly weapon. People v. Carines, 460 Mich. 750, 759, 597 N.W.2d 130 (1999). The elements of assault with intent to commit murder are: "(1) an assault, (2) with an actual intent to kill, (3) which if successful, would make the killing murder."

Warren v. Smith, 161 F.3d 358, 361 (6th Cir. 1998) (citing Michigan law); People v. Ericksen, 288 Mich. App. 192, 195 (2010); M.C.L. § 750.83.

To convict a defendant under an aiding and abetting theory, a prosecutor must show: (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or knew that the principal intended to commit the crime at the time he or she gave aid and encouragement. Carines, 460 Mich. at 757-58; see also People v. Robinson, 475 Mich. 1, 6 (2006); M.C.L. § 767.39. An aider and abettor's state of mind may be inferred from all the facts and circumstances, including a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime. Carines, 460 Mich. at 757-58.

As with any offense, the prosecution must prove beyond a reasonable doubt that the defendant committed the charged offense. People v. Kern, 6 Mich. App. 406, 409, 149 N.W.2d 216 (1967). Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, People v. Jolly, 442 Mich. 458, 466 (1993), including the identity of the perpetrator, Kern, 6 Mich. App. at 409, see also People v. Johnson, 146 Mich. App. 429, 434, (1985), and the defendant's intent or state of mind. People v. Dumas, 454 Mich. 390, 398 (1997); see also People v. Nowack, 462 Mich. 392, 402-03 (2000).

### 2. State Court Decision

With these state law principles in mind and applying the Jackson standard, the Michigan Court of Appeals denied relief on this claim while addressing Petitioner's

13

claims that the second-degree murder verdict was against the great weight of the evidence/not supported by sufficient evidence and that the trial court erred in denying his directed verdict motion on the second-degree murder and assault with intent to commit murder charges. The court of appeals explained in relevant part:

> In reviewing a challenge to the legal sufficiency of the evidence, a reviewing court must examine the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. People v. Parker, 288 Mich App 500, 504; 795 NW2d 596 (2010).
> * * *
> The evidence showed that Tong and Tou Lor headed up a group of men who confronted the victims outside Tong's house. Tou Lor, who owned a .45–caliber Taurus semi-automatic handgun, was armed with a handgun and Tong Lor was armed with some type of long gun. Another unidentified member of the group was armed with some type of handgun. There was conflicting evidence regarding who opened fire, but evidence indicated that both defendants fired in the victims' direction. Cher Kue was shot and killed. The evidence did not conclusively show who fired the shots that struck Cher Kue. However, the evidence supported an inference that the shots could only have come from one or more of the guns possessed by defendants and the other man in their group because they were the only persons armed with and firing weapons outside the house that night.
>
> Regardless of who fired the actual shots that struck Cher Kue, the evidence was sufficient to show that both defendants possessed the requisite malice to be convicted of second-degree murder. Malice may be inferred from the use of a deadly weapon. Carines, 460 Mich. at 759. Further, the evidence showed that each defendant allied himself with others who confronted Cher Kue and his friends while openly armed with guns. Both defendants thus had reason to know that the others at least intended an assault, and the evidence showed that both defendants participated in that assault. The death of Cher Kue was a natural and probable consequence of each defendant's participation in the assault "because a homicide might be expected to happen if the occasion should arise within the common enterprise of committing" an armed assault. Robinson, 475 Mich. at 11 (internal quotation marks omitted). There was no evidence suggesting that the shooting could be justified or legally excused. Cher Kue and his friends were unarmed and had done nothing to threaten defendants or anyone else. Accordingly, the evidence was sufficient to support each defendant's conviction of second-degree murder beyond a reasonable doubt.

14

> \*\*\*
>
> As previously discussed, the evidence showed that while armed with a gun, Tong Lor confronted a group of unarmed men gathered outside his house. Nou and Mou Lee were part of that group. Tong Lor did not know who they were and did not want them there. He suddenly began shooting at them. The Lees and their friends were unarmed and had done nothing to provoke the attack. The evidence was sufficient to prove that Tong Lor assaulted the Lees with the intent to commit murder. Accordingly, the trial court properly denied Tong Lor's motion for a directed verdict of the murder and assault charges.

Lor, 2014 WL 3784341 at *4-5.

### 3. Analysis

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The testimony at trial revealed that Petitioner, while armed with a long gun/assault weapon, led a group of several men, at least one of whom was armed with a smaller gun, to confront Cher Kue and his companions when they arrived at the graduation party at Petitioner's home sometime after midnight, that Cher and his companions were unarmed, that Petitioner aimed his gun at them, that multiple gunshots were fired, that some gunshots sounded louder than the others, that ballistics evidence from the scene was consistent with a gun owned by Petitioner's brother, co-defendant Tou Lor, and that Cher was hit with two gunshots and died from those injuries. Nicholas Vue did not see anyone who did the shooting. Nou Lee and Mou Lee did not see Petitioner fire his gun, but Mou said that he ducked down once the shooting began. Phong Vang testified that Petitioner fired his gun toward Cher and Mou. The ballistics evidence indicated that at least two guns were fired at the scene. While there was no indication that a shotgun or rifle had been fired, the police and expert witness acknowledged that all of the ballistic evidence may not have

recovered from the scene and that some recovered fragments were too small to test. Such testimony, and reasonable inferences therefrom, are sufficient to establish beyond a reasonable doubt that Petitioner, acting as a principal and/or as an aider and abettor, committed second-degree murder and two counts of assault with intent to commit murder.

Petitioner challenges the inferences the jury drew from the testimony presented at trial and the jury's witness credibility determinations. However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve such evidentiary conflicts. Cavazos, 565 U.S. at 7; Jackson, 443 U.S. at 326; Walker v. Engle, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.").

Petitioner also challenges the Michigan Court of Appeals' factual finding that he fired his gun during the incident. As noted, a state court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and a petitioner may rebut this presumption only with clear and convincing evidence. Warren, 161 F.3d at 360-61. Petitioner fails to do so. First, Phong Vang's testimony directly supports the Michigan Court of Appeals' factual finding that Petitioner fired his gun. Second, multiple witnesses testified that more than one gun was fired during the altercation, and Petitioner was one of the two or three men seen with a gun. Third, while Nou Lee and Mou Lee testified that they did not see Petitioner fire his gun, Mou said that he ducked down once the shooting started such that he did not see who fired all of the shots.

16

Fourth, while there was no ballistics evidence showing that a rifle or shotgun was fired, the police and expert witness testimony indicated that at least two guns were fired, that some ballistics evidence may not have been found, and that some recovered fragments were untestable.  The Michigan Court of Appeals' factual finding is thus supported by the evidence and reasonable inferences therefrom.  Petitioner has not rebutted the presumption of correctness with clear and convincing evidence.

Moreover, even if Petitioner did not fire his gun, there was sufficient evidence to support his convictions as an aider and abettor.  The fact that Petitioner led a group of men to confront Cher Kue and his companions when they arrived at the party sometime after midnight, that Petitioner and at least one other man were armed with guns, that Petitioner pointed his gun at the victims, that multiple shots were fired from at least two weapons, that ballistics evidence recovered from the scene was consistent with a gun owned by Petitioner's brother, co-defendant Tou Lor, and that Cher died from two gunshot wounds supports a finding that one or more of the men in Petitioner's group committed the shooting, that Petitioner acted or encouraged the commission of the shooting, and that Petitioner had the requisite intent, i.e., that he intentionally set in motion a force likely to cause death or great bodily harm and was more than a mere bystander.  See, e.g., Hill v. Hofbauer, 337 F.3d 706, 719–20 (6th Cir.2003) (malice for second-degree murder under Michigan law can be inferred from aider and abettor's knowledge that principal possessed a weapon).

Petitioner's argument that the Michigan Court of Appeals' decision is contrary to, or erroneous application of, Nye & Nissan v. United States, 336 U.S. 613 (1949), is misplaced.  That decision interpreted aiding and abetting as a matter of federal law.  In

17

deciding whether there is sufficient evidence to support a state court conviction on habeas review, however, a federal court must apply the Jackson standard "with explicit reference to the substantive elements of the criminal offense as defined by state law." Brown, 441 F.3d at 351 (quoting Jackson, 443 U.S. at 324 n. 16). The Court has done so here. The jury's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable. The evidence presented at trial, viewed in a light favorable to the prosecution, established beyond a reasonable doubt that Petitioner committed the crimes of which he was convicted. Habeas relief is not warranted on this claim.

Lastly, to the extent that Petitioner cites People v. Robinson, 475 Mich. 1 (2006), and asserts that the Michigan Court of Appeals misinterpreted state law or otherwise erred under state law with regard to the insufficient evidence claim, he fails to state a claim upon which habeas relief may be granted. See King v. Trippett, 27 F. App'x 506, 510 (6th Cir. 2001) (upholding district court's ruling that petitioner failed to state a habeas claim where he alleged that trial court erred in denying directed verdict motion). State courts are the final arbiters of state law and federal courts will not intervene in such matters. Lewis v. Jeffers, 497 U.S. 764, 780 (1990); see also Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court on habeas review"); Sanford v. Yukins, 288 F.3d 855, 860 (6th Cir. 2002). Habeas relief does not lie for perceived errors of state law. Estelle, 502 U.S. at 67-68.

## V.  Conclusion

For the reasons stated above, Petitioner is not entitled to federal habeas relief on his claim. Accordingly, the petitioner is DENIED.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); F.R.A.P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Slack v. McDaniel, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). Petitioner has not made this such showing. Accordingly, a certificate of appealability is DENIED.

SO ORDERED.

S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: 10/29/2018
Detroit, Michigan